**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **DYNAENERGETICS EUROPE GMBH, and DYNAENERGETICS US, INC.** | § § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | Civil Action No. 6:20-CV-01201 |
| **NEXTIER COMPLETION SOLUTIONS INC.** | § § § § | Jury Trial Demanded |
| *Defendant.* | § | |

**DEFENDANT NEXTIER COMPLETION SOLUTIONS INC.
MOTION TO TRANSFER TO THE SOUTHERN DISTRICT OF TEXAS**

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

FACTUAL BACKGROUND .................................................................................................. 1

    A.    DynaEnergetics' Infringement Allegations and Parallel Litigation ........................ 1

    B.    NCS's Relevant Witnesses and Documents Reside in Houston, Texas ................. 3

    C.    DynaEnergetics Has No Meaningful Connection to the WDTX ............................ 3

    D.    Third-Party Manufacturers of Accused Products Are Outside the WDTX ............ 4

    E.    Identified Non-Obviousness and Prior Art Witnesses Are in the SDTX or Otherwise Outside the WDTX ................................................................................ 5

ARGUMENT ............................................................................................................................ 5

    F.    All Private Interest Factors Favor Transfer to the SDTX ....................................... 6

        1.    The Ease of Access to Sources of Proof Weighs Heavily in Favor of Transfer 6

        2.    The Availability of Compulsory Process to Secure Attendance of Witnesses Strongly Favors Transfer .................................................................................... 7

        3.    The Cost of Attendance for Willing Witnesses Heavily Favors Transfer ....... 10

        4.    Judicial Economy Weighs in Favor of Transfer .............................................. 11

    G.    The Public Interest Factors Also Favor Transfer to the SDTX ............................ 12

        1.    Administrative Difficulties Related to Court Congestion Favors Transfer ..... 12

        2.    The SDTX's Localized Interest Weighs Heavily in Favor of Transfer ........... 13

        3.    The Remaining Public Interest Factors are Neutral ......................................... 15

CONCLUSION ....................................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*10Tales, Inc. v. TikTok Inc.*,
    No. 6:20-CV-00810-ADA, 2021 WL 2043978 (W.D. Tex. May 21, 2021) .............. 8, 9, 11, 13

*Auto–Dril, Inc. v. National Oilwell Varco, L.P.*,
    2016 WL 6909479 (W.D. Tex. 2016) ........................................................................... 8, 10

*DataQuill, Ltd. v. Apple, Inc.*,
    2014 WL 2722201 (W.D. Tex. June 13, 2014) ..................................................................... 14

*DynaEnergetics Europe GmbH v. Hunting Titan Inc.*,
    No. 6:20-cv-00069-ADA, 2020 WL 3259807 (W.D. Tex. June 16, 2020) .................... 2, 11, 14

*DynaEnergetics Europe v. G&H Diversified Mfg., LP*,
    No. 6:20-CV-01110-ADA (W.D. Tex.) ............................................................................ 4, 5, 6

*DynaEnergetics Europe v. SWM Int'l*,
    No. 3:21-cv-00192-M (N.D. Tex.) ........................................................................................ 4

*GeoTag, Inc. v. Starbucks Corp.*,
    2013 WL 890484 (E.D. Tex. Jan. 14, 2013) .......................................................................... 8

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947) ............................................................................................................ 14

*Hammond Dev. Int'l, Inc. v. Google LLC*,
    2020 WL 3452987 (W.D. Tex. June 24, 2020) ................................................................... 15

*In re Apple Inc.*,
    979 F.3d 133 (Fed. Cir. 2020) ............................................................................................. 6

*In re Apple Inc.*,
    979 F.3d at 1345 ................................................................................................................ 13

*In re Apple, Inc.*,
    581 F.App'x 886 (Fed. Cir. 2014) ........................................................................................ 8

*In re Genentech*,
    566 F.3d 1338 (Fed. Cir. 2009) ............................................................................... 6, 12, 13

*In re Morgan Stanley*,
    417 F. App'x 947 (Fed. Cir. 2011) ...................................................................................... 12

*In re Nintendo*,
    589 F.3d at 1198 ................................................................................................................ 15

*In re Verizon Bus. Network Servs. Inc.*,
  635 F.3d 559 (Fed. Cir. 2011) .................................................................................................. 12

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) ..................................................................................................... 14

*NexTier Completion Solutions Inc. v. DynaEnergetics Europe GmbH*,
  No. 4:21-cv-1328 (April 21, 2021) .............................................................................................. 2

*Polaris Innovations Ltd. v. Dell, Inc.*,
  2016 WL 7077069 (W.D. Tex. Dec. 5, 2016) ............................................................................ 14

*Solas OLED Ltd. v. Apple Inc.*,
  2020 WL 3440956 (W.D. Tex., 2020) ....................................................................................... 10

*Uniloc USA v Box, Inc.*,
  No. 17-754, 2018 WL 2729202 (W.D. Tex. June 6, 2018) ................................................. 11, 13

*USPC Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc.*,
  2011 WL 1103372 (N.D. Tex. Mar. 25, 2011) .......................................................................... 12

*Wireless Recognition Techs. LLC v. A9.com, Inc.*,
  2012 WL 506669 (E.D. Tex. Feb. 15, 2012) ............................................................................. 13

*XY, LLC v. Trans Ova Genetics, LC*,
  2017 WL 5505340 (W.D. Tex. Apr. 5, 2017) ............................................................................ 14

**Statutes**

35 U.S.C. § 102(a)(1) ......................................................................................................................... 5

35 U.S.C. § 103 .................................................................................................................................. 5

## INTRODUCTION

This is a case between two Houston-based companies[1] that focuses on perforating gun products that are designed and manufactured in Houston. As a result, this case could have been originally filed in Houston, and the overwhelming bulk of the evidence and witnesses will come from both parties' offices in Houston. Indeed, Plaintiff DynaEnergetics itself filed multiple other lawsuits in the Houston Division of the Southern District of Texas that involve the same patent-at-issue. Accordingly, the Court should transfer this case to the Southern District of Texas because the Section 1404 factors overwhelmingly favor transfer.

## FACTUAL BACKGROUND

**A.    DynaEnergetics' Infringement Allegations and Parallel Litigation**

DynaEnergetics accuses NexTier Completion Solutions ("NCS") of infringing U.S. Patent No. 10,844,697 ("the '697 Patent"). *See* Dkt. 24. The '697 Patent is directed toward perforating guns used by oilfield companies to prepare oil and gas wells for production. Ex. A (the '697 Patent) at 1:33-61. The perforating guns accused in this litigation include NCS's own products and third-party products designed by G&H Diversified Manufacturing, LP ("G&H") and by SWM International, LLC ("SWM"). Dkt. 24 at ¶¶ 29, 41.

DynaEnergetics has asserted the '697 Patent in multiple cases that are currently pending in multiple judicial districts, including the Houston Division of the Southern District of Texas, where NCS seeks to transfer this litigation. Ex. B (Summary of cases regarding the '697 Patent). Similarly, before being added as a defendant in this case, NCS filed a declaratory judgment action in the SDTX's Houston Division for non-infringement of the '697 Patent, based on the

---

[1] Although plaintiff DynaEnergetics Europe GmbH is based out of Germany, its American subsidiary and co-plaintiff, DynaEnergetics US, Inc., is headquartered in Houston and purports to be the exclusive licensee of the asserted patent in the United States. Dkt. 24 at ¶¶ 1, 2, 17.

1

fact that both parties are headquartered in Houston.[2] As a result, several cases involving the same patent and technology at issue in the present case are pending in the SDTX's Houston Division:

| Civil Action No. | Description |
| --- | --- |
| 4:21-cv-1328 (S.D. Tex.) (Rosenthal, J.) | NCS's declaratory judgment action against DynaEnergetics. |
| 4:21-cv-280 (S.D. Tex.) (Rosenthal, J.) | DynaEnergetics' lawsuit filed against Nexus Perforating LLC ("*Nexus* Case"). |
| 4:21-cv-283 (S.D. Tex.) (Rosenthal, J.) | DynaEnergetics' lawsuit filed against Vigor USA, LLC ("*Vigor* Case"). |

All of the SDTX cases are before Judge Rosenthal. Judge Rosenthal has undertaken specific efforts to assign the *Nexus* and *Vigor* Cases the same docket,[3] and has already entered a scheduling order, set the *Markman* hearing for December 2021, and set trial for December 2022. Ex. E (*Nexus* Case, No. 4:21-cv-280, ECF 28) at p. 3. Judge Rosenthal has also ordered the parties in NCS's declaratory judgment action to submit a proposed scheduling order coordinating the case with the *Nexus* and *Vigor* cases. *See* Ex. F (No. 4:21-cv-1328, ECF 13) at p. 2. Because the related cases are being placed on Judge Rosenthal's docket, she will obtain significant familiarity with the patents and technology at issue.

---

[2] *NexTier Completion Solutions Inc. v. DynaEnergetics Europe GmbH*, No. 4:21-cv-1328 (April 21, 2021), ECF 1. Although the SDTX declaratory judgment action is first-filed with regard to NCS, this Motion to Transfer is not based on the first-to-file rule but on the Section 1404 convenience factors. *See DynaEnergetics Europe GmbH v. Hunting Titan Inc.*, No. 6:20-cv-00069-ADA, 2020 WL 3259807, at *3 (W.D. Tex. June 16, 2020) (holding that the convenience factors favored transferring DynaEnergetics' patent infringement suit to the Houston Division of the Southern District of Texas).

[3] Specifically, the parties in the *Nexus* Case attended an initial scheduling conference on May 5, 2021, where Chief Judge Rosenthal ordered the parties to "submit a revised scheduling order and an agreed motion to transfer [the *Vigor* Case] to [her] court for coordinated case management." Ex. C (*Nexus* Case, Civil Action No. 4:21-cv-280, ECF 26 (minute entry)). A week after the scheduling conference, Judge Rosenthal transferred the *Vigor* Case to her docket. *See* Ex. D (*Nexus* Case, Civil Action No. 4:21-cv-280, ECF 30 (Order on Motion to Transfer Case)).

**B.     NCS's Relevant Witnesses and Documents Reside in Houston, Texas**

Houston is the center of NCS's business. NCS is a corporation with its principal place of business and headquarters in Houston. Ex. G (Declaration of Lloyd Hegle) at ¶ 5. Three hundred and thirty-four of NCS's employees work at NCS's headquarters and reside within commuting distance of Houston. *Id*. at ¶ 6. NCS maintains its documents and records at its Houston headquarters, including technical, engineering, and sales documents for the products used and manufactured by NCS. *Id*. at ¶ 8. Those Houston-based employees are responsible for the key sales and management decisions relating to NCS's business. *Id*. at ¶ 9. This includes NCS's executives who live within commuting distance of Houston. *Id*. at ¶ 10.

Naturally, the accused products have substantial ties to NCS's headquarters in Houston. NCS designed, developed, and manufactured the accused "GameChanger$^{TM}$ Perforating System" ("GameChanger") product in Houston. *Id*. at ¶¶ 13, 14. NCS's documents related to those efforts are in Houston, including technical, engineering, and sales documents. *Id*. at ¶¶ 8, 18. Similarly, NCS's Houston headquarters maintains documents and records relevant to parts purchased from G&H. *Id*. at ¶ 19. No relevant documents are located anywhere near Waco. *Id*. at ¶ 18, 19.

**C.     DynaEnergetics Has No Meaningful Connection to the WDTX**

DynaEnergetics' U.S. headquarters is also in Houston, Texas.[4] Public information shows that dozens of DynaEnergetics' relevant employees are based in Houston, including several whom NCS is likely to call as witnesses: Edwin Reek (Vice President of Product Management and Marketing), Millad Mortazavi (Fracturing Design and Business Development), Thomas

---

[4] Specifically, DynaEnergetics US, Inc. is organized under Colorado law and has its principal place of business in Houston, Texas. Dkt. 24 at ¶ 2. Its parent corporation, DynaEnergetics Europe GmbH, is organized under the laws of Germany. *Id.* at ¶ 1. DynaEnergetics US, Inc. is the exclusive licensee of the '697 Patent in the United States. *Id.* at ¶ 17.

3

Meyer (Market Development Manager), Jim McKirahan (Director of Finance), and Timothy Adams (Vice President of Business Development). Ex. H.

**D.      Third-Party Manufacturers of Accused Products Are Outside the WDTX**

DynaEnergetics' complaint also accuses NCS of infringing the '697 Patent by using third-party products. *See* Dkt. 24 at pp. 24-26. However, neither G&H nor SWM, the suppliers of the accused third-party products, are located in Waco.

With respect to DynaEnergetics' allegations regarding G&H's involvement, G&H is unique among third parties because it manufactures components of the accused GameChanger product. Ex. 1 at ¶ 29. These components are manufactured at G&H's Houston headquarters, and the relevant documents and witnesses would similarly be in Houston. *See* Ex. I (G&H's Motion to Dismiss or Transfer, *DynaEnergetics Europe v. G&H Diversified Mfg., LP*, No. 6:20-CV-01110-ADA (W.D. Tex.), ECF 24) at 8.

With respect to DynaEnergetics' allegations regarding SWM's involvement, DynaEnergetics' complaint states that it has already sued SWM regarding the same asserted patent and accused products in the Northern District of Texas and that it is not seeking a double recovery. Dkt. 24 at ¶ 40. As a result, DynaEnergetics' attempt to interject SWM into this lawsuit is irrelevant to the pending transfer motion. However, even setting that aside, SWM is headquartered in Pampa, Texas—not the WDTX or anywhere near Waco. *See* Ex. J (SWM's Website); *see also* Ex. K (*DynaEnergetics Europe v. SWM Int'l*, No. 3:21-cv-00192-M (N.D. Tex.) ECF 1) at 1. As a result, to the extent SWM could possibly be relevant to this case, any documents and witnesses would be located in Pampa, Texas. *Id*.

### E.     Identified Non-Obviousness and Prior Art Witnesses Are in the SDTX or Otherwise Outside the WDTX

In its initial disclosures in another case asserting the '697 Patent, DynaEnergetics has identified Schlumberger, Apache Corporation, Halliburton, Weatherford, Baker Hughes, Welltec, and Patriot as having knowledge of invalidity and non-obviousness. *See* Ex. L (*DynaEnergetics Europe v. G&H Diversified Mfg.*, No. 6:20-CV-01110-ADA (W.D. Tex.), ECF 24-20) at 7. All seven of these companies are based in the SDTX. Ex. M.

At least one of those SDTX-based companies, Schlumberger, is also relevant as a source of prior art. While NCS is still in the progress of formulating its invalidity contentions, it has identified at least two prior art references assigned to Schlumberger that are relevant to the '697 Patent. *See* Ex. N (U.S. Pat No. 10,077,641); Ex. O (U.S. Pat. Pub. No. 2016/0084048). Seven of the inventors of these prior art references live and work in the Houston area, and none of them live in the WDTX. *See* Ex. P (Prior Art Inventors' LinkedIn and Google Maps); Ex. 1, Decl. of Michael McBride at ¶ 18 (showing location of witnesses). Related to these two references are the Schlumberger Fractal and Safe Jet systems, which are also potential invalidating systems under at least 35 U.S.C. § 102(a)(1) and § 103. These inventors, as well as other witnesses at Schlumberger, will therefore possess information and documents on patents and systems that are directly relevant to the validity of the '697 Patent.

### ARGUMENT

The private interest factors (the ease of access of sources of proof, the availability of compulsory process, the cost of attendance for willing witnesses, and judicial economy) all weigh in favor of transferring this case from this Court to the SDTX. Specifically, (1) all sources of proof are either more available or equally available in the SDTX relative to the WDTX; (2) compulsory process is available for at least *fourteen* likely third-party witnesses in the SDTX

5

compared to *none* in the WDTX; (3) the cost of attendance favors the SDTX for *seven* likely willing witnesses and is neutral between the districts for the others; and (4) NCS's declaratory judgment action and two other cases filed by DynaEnergetics asserting infringement of the '697 Patent are pending in the SDTX before Judge Rosenthal.

Likewise, the public interest factors either favor transfer to the SDTX or are neutral. Specifically, (1) court congestion favors transfer, because NCS's declaratory judgment action is before Judge Rosenthal who has a rapid time to trial and who is likely to coordinate it with the *G&H* and *Vigor* cases; and (2) the SDTX's localized interest heavily outweighs the limited interest that the WDTX has in this case. In total, the SDTX is the preferable venue for at least *twenty-one* potential witnesses while NCS is aware no witnesses for whom the WDTX is the preferable, and six of the eight factors favor transfer, while the remaining two factors are neutral.

F.     All Private Interest Factors Favor Transfer to the SDTX

   1.     The Ease of Access to Sources of Proof Weighs Heavily in Favor of Transfer

The Federal Circuit has explained that "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)).

Here, documents from both parties will be found in the SDTX. As to NCS—the focus of this inquiry as the accused infringer—its Houston headquarters is the location of technical and engineering documents that disclose the designs of the GameChanger and other accused products. Ex. G at ¶¶ 5, 8; *see supra* at § B. Documents that reflect NCS's business activities relating to the accused products are also in Houston, such as sales documents and financial records. Ex. G at ¶¶ 8, 18, 19. Any relevant documents that are in the WDTX are duplicative of

documents maintained at the Houston headquarters. *Id*. at ¶ 22. Similarly, the relevant documents in DynaEnergetics' possession are located at DynaEnergetics' U.S. headquarters in Houston. Dkt. 24 at ¶ 2.

Likewise, the most relevant third-party documents are in the SDTX. None of the engineering and technical documents for the accused G&H and SWM products are in the WDTX. Specifically, G&H is headquartered in in Houston; it operates out of Houston; and all potentially relevant documents related to the G&H components-at-issue are in Houston. *See* Ex. I at 8. SWM is likely irrelevant in this case, as explained above in § D, but to the extent it becomes relevant, SWM is headquartered in Pampa, Texas, in the Northern District of Texas, and as a result its documents are in the NDTX. *See* Ex. J (SWM's Website); *see also* Ex. K at ¶ 3.

Furthermore, as discussed above, DynaEnergetics has disclosed seven companies as having knowledge of the "Non-obviousness of the '697 Patent." All seven are based in the SDTX and therefore have relevant documents in the SDTX. Ex. M. And also as discussed above, Schlumberger (along with the associated inventors of the Schlumberger prior art) is a source of relevant documents. Schlumberger and a majority of those inventors are based out of Houston, and so these documents are located in Houston. *See* Ex. M; Ex. P; Ex. 1 at ¶ 18.

In short, the relevant documents in the parties' possession are in the SDTX, and any relevant documents in the possession of third parties are either in the SDTX or are otherwise outside both the SDTX and the WDTX. As a result, this factor weighs heavily in favor of transfer.

   **2.  The Availability of Compulsory Process to Secure Attendance of Witnesses Strongly Favors Transfer**

The overwhelming majority of likely third-party witnesses reside or are employed in the SDTX. As a result, this factor weighs heavily in favor of transfer to the SDTX. *See GeoTag*, *Inc.*

*v. Starbucks Corp.*, 2013 WL 890484, at *3 (E.D. Tex. Jan. 14, 2013) ("[T]ransfer is heavily favored when the majority of the non-party witnesses reside in the transferee forum."); *see also 10Tales, Inc. v. TikTok Inc.*, No. 6:20-CV-00810-ADA, 2021 WL 2043978, at *3 (W.D. Tex. May 21, 2021) ("This factor will weigh heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue.") (citing *In re Apple, Inc.*, 581 F.App'x 886, 889 (Fed. Cir. 2014)).

First, DynaEnergetics' infringement allegations implicate witnesses affiliated with third-parties G&H and SWM. These witnesses are either in the Houston area or are located outside both the SDTX and WDTX. Specifically, G&H is based out of Houston. Ex. Q ¶¶ 6-9. The three G&H witnesses with knowledge of the Accused G&H Product (John Kaiser, Ben Knight, and Ryan Ward, *id.* at ¶¶ 2, 17-19) are unwilling to attend trial in this case unless subpoenaed to testify. Ex. R at ¶ 6; Ex. S at ¶ 6; Ex. T at ¶ 6. All three live and work in the Houston area. Ex. R at ¶ 5; Ex. S at ¶ 5; Ex. T at ¶ 5; Ex. Q at ¶¶ 2, 17-19. If commanded to attend trial in Waco, all three G&H witnesses would incur substantial expenses—due to the distance, need for overnight accommodation, and time away from home and work—that would not be required if commanded to attend trial in Houston. Ex. R at ¶¶ 7-8; Ex. S at ¶¶ 7-8; Ex. T at ¶¶ 7-8; *see also Auto–Dril, Inc. v. National Oilwell Varco, L.P.*, 2016 WL 6909479, at *8 (W.D. Tex. 2016) (holding witnesses would incur a substantial expense if required to travel from Houston to Waco). As a result, compulsory process is not available to secure the attendance of these G&H witnesses in the WDTX, and their location weighs heavily in favor of transfer.

Meanwhile, SWM is headquartered in Pampa, Texas, in the Northern District of Texas, more than 100 miles from either Waco or Houston. Ex. J. Specifically, SWM's headquarters in Pampa is located over 400 miles (or over 6 hours by car) from Waco, Ex. U, and the most likely

SWM witness, Dawna Mauldin, is unwilling to attend trial in this case unless subpoenaed to testify. Ex. V (Declaration of Dawna Mauldin) at ¶ 6. Whether commanded to attend trial in Waco or in Houston, either would be equally inconvenient, *id.* at ¶ 8, and Ms. Mauldin would incur substantial expenses due to the distance, need for overnight accommodation, and time away from home and work. *See 10Tales*, 2021 WL 2043978, at *4 (discounting witnesses that "will be inconvenienced by extensive travel regardless of the forum"). As a result, the location of the SWM witness is neutral for this factor.

Second, as discussed above, all seven of the companies that DynaEnergetics has identified as having knowledge of the prior art are based in the SDTX. *See* Ex. M; *see also* § E, *supra*. As a result, their relevant witnesses will be in the SDTX and subject to a Houston court's subpoena power. Moreover, seven of the ten prior art witnesses that NCS has identified at Schlumberger reside in the SDTX; none of them reside in the WDTX. Ex. 1 at ¶ 9.

Third, several former NCS employees are knowledgeable about the research, design, and development of the GameChanger and are likely to serve as witnesses. Ex. G at ¶ 17. These include Steve DeLozier, Bulent Finci, George Innes, and Jaime Pedraza. *Id*. All of these former employees still live and work in the Houston area. *See* Ex. W. As such, compulsory process is not available to secure the attendance of these potential witnesses before this Court, but it would be available for all four if this case were transferred to the SDTX.

Additionally, this factor is neutral with respect to the inventors listed on the '697 Patent who are no longer employed by DynaEnergetics[5]—Frank Preiss, Eric Mulhern, and David

---

[5] Ex. X (Declaration of Ian Grieves, president of DynaEnergetics US, Inc. and the DynaEnergetics Division of DMC Global) at ¶ 15 (Frank Preiss no longer works for DynaEnergetics); Ex. H (LinkedIn pages of Frank Preiss, Eric Mulhern, and David Parks).

Parks—because they are located outside the United States. Ex. X at ¶ 15; Ex. A at p. 1; Ex. H at pp. 40, 46, 52.

Given the nature of a patent trial, the uncertainty of when witnesses will testify, and the distance from the Houston area to the Waco area, the attendance of the Houston-based witnesses at trial in the WDTX would be cost prohibitive. *See Auto–Dril, Inc. v. National Oilwell Varco, L.P.*, 2016 WL 6909479, at *8 (W.D. Tex. 2016) (holding witnesses would incur a substantial expense if required to travel from Houston, TX to Waco, TX). As a result of these witnesses' locations, at least ***fourteen*** witnesses are within the compulsory subpoena power of a Houston court, whereas none are within the compulsory subpoena power of this Court. Once witnesses are identified at the seven SDTX companies that DynaEnergetics named as having knowledge of the prior art, it is likely that this count will swing even further in favor of transfer to the SDTX. This factor strongly favors transfer.

### 3. The Cost of Attendance for Willing Witnesses Heavily Favors Transfer

The convenience of witnesses is the single most important factor in the transfer analysis. *Genentech*, 566 F.3d at 1342. The court considers all potential material and relevant witnesses. *Solas OLED Ltd. v. Apple Inc.*, 2020 WL 3440956, at *6 (W.D. Tex., 2020).

Although the convenience of party witnesses is given little weight compared to non-party witnesses, courts will still consider it as part of the transfer analysis. *Id*. As detailed above, NCS's two current employees with knowledge relevant to this case, Kevin Zanca and Ashwin Gupte, as well as all potentially relevant NCS executives, are in Houston. Ex. G at ¶¶ 10, 16.

Similarly, all of DynaEnergetics' own relevant employees, including the five witnesses identified above in § C, are located either in Houston or abroad. To the extent there are witnesses who will have to travel internationally, such as Liam McNelis and Thilo Scharf (the inventors of

the '697 Patent who are still employed by DynaEnergetics)[6], appearing "in Waco after traveling from either Dallas or Houston would produce additional travel time and difficulty whereas traveling to and appearing in Houston would be significantly easier." *DynaEnergetics Europe GmbH v. Hunting Titan Inc.*, No. 6:20-cv-00069-ADA, 2020 WL 3259807, at *7 (W.D. Tex. June 16, 2020); *See also 10Tales*, 2021 WL 2043978, at *4 (discounting witnesses who "will be inconvenienced by extensive travel regardless of the forum").

Added up, there are at least **seven** likely witnesses for whom trial in the SDTX is more convenient and two witnesses for whom trial would be equally convenient (or inconvenient) between the WDTX and the SDTX. In contrast, NCS is unaware of any witness for which trial in Waco will be more convenient than a trial in Houston. Accordingly, this factor weighs heavily in favor of transfer.

4. **Judicial Economy Weighs in Favor of Transfer**

"[M]ultiple suits involving the same or similar issues may create practical problems that will weigh in favor of or against transfer." *Uniloc USA v Box, Inc.*, No. 17-754, 2018 WL 2729202, at *4 (W.D. Tex. June 6, 2018) (citations omitted). Thus, considerations of judicial economy are important "where there is co-pending litigation before the trial court involving the same patent and underlying technology." *Id*.

Importantly, DynaEnergetics already filed cases in the SDTX against two Houston-based defendants for infringement of the '697 Patent. Recently, those two cases—the *Vigor* case and the *Nexus* case—were consolidated for pre-trial coordination before Judge Rosenthal. Because Judge Rosenthal will obtain significant familiarity with the asserted patent and technology through that parallel litigation, transferring this case will not hurt judicial economy. *See In re*

---

[6] *See* Ex. A; Ex. H; Ex. X.

*Morgan Stanley*, 417 F. App'x 947, 950 (Fed. Cir. 2011) (finding consolidation of cases a factor in granting transfer) (non-precedential); *see also In re Verizon Bus. Network Servs. Inc.*, 635 F.3d 559, 562 (Fed. Cir. 2011) (finding it proper to consider "co-pending litigation before the district court involving the same patent and underlying technology" in a transfer analysis).

In fact, for the related cases pending in the WDTX, DynaEnergetics' own complaints identify those defendants as being based in either the SDTX or the NDTX—where DynaEnergetics has **already brought multiple cases** involving the exact same patent-at-issue.[7] *See generally* Ex. B and related complaints. In other words, if DynaEnergetics had any concern for judicial economy, it could have filed each of its WDTX cases in either the SDTX or NDTX for coordination with other pending cases involving the same technology and patent. As a result, this factor should favor transfer, or at the very least, be neutral.

G.  **The Public Interest Factors Also Favor Transfer to the SDTX**

   1.  **Administrative Difficulties Related to Court Congestion Favors Transfer**

Court congestion is measured by "whether a trial may be speedier in another court because of a less crowded docket." *Genentech*, 566 F.3d at 1347. In analyzing court congestion, "courts commonly consider the Federal Judicial caseload statistics." *USPC Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc.*, 2011 WL 1103372, at *5 (N.D. Tex. Mar. 25, 2011).

---

[7] Additionally, there is a high likelihood that two of the related cases currently before this Court, *DynaEnergetics Europe v. Rock Completion Tools, LLC*, No. 6:21-CV-00084-ADA and *DynaEnergetics Europe v. G&H Diversified Mfg., LP*, No. 6:20-CV-01110-ADA, will not impact judicial efficiency. In the *Rock Completion Tools* case, DynaEnergetics has moved for a default judgment against the only remaining defendant, *see* Ex. Y (6:21-CV-00084-ADA at Dkt. 25), and G&H has moved to transfer the *G&H* case to the SDTX under *T.C. Heartland*. Ex. I. It is reasonably likely that the defendants in the other related cases will likewise move to transfer.

The WDTX and SDTX have a similar number of filings per judgeship.[8] For patent cases, a limited sample suggests that time to trial in the WDTX is roughly two years, compared to three years in the SDTX. *See* Ex. Z. But the significance of this data is questionable, because both districts have tried fewer than eight patent cases since September 2018. *Id.*

Given the Federal Circuit's admonition that "this factor appears to be the most speculative . . . and case-disposition statistics may not always tell the whole story[,]" *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009), it is more instructive to compare the schedules between the WDTX case and the related SDTX cases. As discussed above, if transferred to the SDTX, this case would likely end up in front of Judge Rosenthal. A better estimate for the time to trial before Judge Rosenthal is less than two years, which can be gleaned from the related Houston cases, which were filed in January of 2021 and which Judge Rosenthal set for trial on December 2022. Ex. E at p. 3. If transferred to the SDTX, this case would be positioned to move even quicker, either due to potential coordination with the related cases or due to Judge Rosenthal's familiarity with the patents and technology at issue. These facts show that transfer will likely expedite the trial date. As a result, this factor favors transfer.

### 2. The SDTX's Localized Interest Weighs Heavily in Favor of Transfer

A forum has a localized interest in resolving a dispute when "defendants are headquartered, develop the accused products, and employ a large number of people in the transferee venue." *Uniloc*, 2018 WL 2729202 at *4 (quoting *Wireless Recognition Techs. LLC v. A9.com, Inc.*, 2012 WL 506669, at *6 (E.D. Tex. Feb. 15, 2012). "One event particularly relevant to this analysis is the location of where 'the accused products were designed, developed, and tested.'" *10Tales*, 2021 WL 2043978, at *5 (quoting *In re Apple Inc.*, 979 F.3d at 1345). And as

---

[8] In 2020, the WDTX had 947 filings per judgeship, compared with 823 filings per judgeship in the SDTX.

13

the Fifth Circuit has explained, "jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)) (internal alteration omitted).

The SDTX has clear connections to this case, while the WDTX does not. As discussed above, Houston is the location of NCS's headquarters, and is where NCS researched, designed, developed and manufactured its GameChanger product. Ex. G at ¶¶ 6, 8, and 13. Houston is also the location of G&H's headquarters, where the G&H components-at-issue were manufactured. *Id.* at 5, 6. It follows that the infringement allegations "call into question the work and reputation" of residents in the SDTX, not the WDTX. *DataQuill, Ltd. v. Apple, Inc.*, 2014 WL 2722201 at *4 (W.D. Tex. June 13, 2014).

These facts clearly favor transfer under precedent from this Court and the Federal Circuit. Although DynaEnergetics has recently opened a facility in the Blum, Texas, "the headquarters remain in the SDTX and DynaEnergetics filed suit in the SDTX twice after opening the flagship facility." *DynaEnergetics Europe GmbH v. Hunting Titan Inc.*, No. 6:20-cv-00069-ADA, 2020 WL 3259807, at *5 (W.D. Tex. June 16, 2020). And as this Court has routinely held, the "district where a party has its principal place of business typically has a stronger local interest in the adjudication of the case." *XY, LLC v. Trans Ova Genetics, LC*, 2017 WL 5505340, at *9 (W.D. Tex. Apr. 5, 2017) (Manske, Mag. J.); *accord Polaris Innovations Ltd. v. Dell, Inc.*, 2016 WL 7077069, at *11 (W.D. Tex. Dec. 5, 2016) (Rodriguez, J.) ("[A] headquarters in a certain location gives [it] a strong local interest."). Even if a movant has "a large number of employees in both districts"—which is not the case here—this factor favors transfer when the movant "researched, designed, and developed the accused functionality" in the transferee district.

*Hammond Dev. Int'l, Inc. v. Google LLC*, 2020 WL 3452987, at *5 (W.D. Tex. June 24, 2020) (Albright, J.). And because this District has no meaningful connection to the case, the local interest factor heavily favors transfer to the SDTX. *See In re Nintendo*, 589 F.3d at 1198 ("The record shows that [the defendant] is incorporated in Washington and has its principal place of business in the Western District of Washington. No parties, witnesses, or evidence have any material connection to the venue chosen by the plaintiff. Therefore, the record leaves only the conclusion that the local interest in Washington clearly favors transfer.").

### 3.  The Remaining Public Interest Factors are Neutral

The remaining public interest factors—conflicts of law and the courts' familiarity with patent law—are neutral.

## CONCLUSION

Because this is a dispute among Houston companies with evidence and witnesses located overwhelmingly in Houston, and because Judge Rosenthal will have familiarity with several other cases related to the '697 Patent in the Southern District of Texas, the case against NCS should be transferred for the convenience of the parties and witnesses.

As shown above, each of the four private interest factors supports transferring this case to the SDTX. The public interest factors also favor transfer. Three of these factors are at worst neutral: the administrative difficulties flowing from court congestion, the familiarity of the forum with the law that will govern the case, and the avoidance of unnecessary problems of conflict of laws. However, the remaining factor, the local interest in having localized interests decided at home, strongly weighs in favor of transfer as the GameChanger and the G&H and SWM Accused Products are designed, developed, and manufactured in the SDTX. For these reasons, transfer to the SDTX is clearly more convenient for the parties.

Dated: June 23, 2021                                    Respectfully submitted,

                                                         */s/ Amir H. Alavi*
                                                        Amir Alavi
                                                        State Bar No. 00793239
                                                        Michael McBride
                                                        State Bar No.: 24065700
                                                        **AHMAD, ZAVITSANOS, ANAIPAKOS,**
                                                        **ALAVI & MENSING, P.C.**
                                                        1221 McKinney Street, Suite 2500
                                                        Houston, Texas 77010
                                                        Telephone: (713) 655-1101
                                                        Facsimile: (713) 655-0062
                                                        aalavi@azalaw.com
                                                        mmcbride@azalaw.com

                                                        **ATTORNEYS FOR DEFENDANT**
                                                        **NEXTIER COMPLETION SOLUTIONS INC.**

## CERTIFICATE OF CONFERENCE

I hereby certify that on June 22, 2021 and on June 23, 2021, I conferred with counsel for Plaintiff in attempt to resolve the issues raised herein. Those attempts were unsuccessful because Plaintiff is opposed to the transfer of this case. Plaintiff's counsel opposes the present motion.

                                                         */s/ Michael McBride*
                                                        Michael McBride

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2021, a true and correct copy of this document has been filed electronically via the Court's CM/ECF filing system and subsequently all counsel in this matter deemed to accept service electronically will be notified via the Court's CM/ECF filing system.

                                                         */s/ Amir H. Alavi*
                                                        Amir Alavi

16